IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNIE PETERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 CV 10805 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | Magistrate Judge Michael T. Mason |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Claimant Annie Peters ("Claimant") seeks reversal of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The Commissioner asks the Court to affirm the previous decision. For the reasons set forth below, Claimant's motion for summary judgment (Dkt. 13) is granted and the Commissioner's motion for summary judgment (Dkt. 17) is denied.

**I. BACKGROUND**

    **A. Procedural History**

On November 26, 2012, Claimant filed her application for SSI alleging disability beginning on June 1, 2004 due to congestive heart failure, coronary heart disease,

hypertension, and thyroid disease.[1] Her application was denied initially and on reconsideration. (R. 57-79.) Claimant appeared with counsel for a hearing before an Administrative Law Judge ("ALJ") on April 6, 2015. (R. 13-42.) On May 22, 2015, the ALJ issued a written opinion, concluding Claimant was not under a disability since the date the application was filed. (R. 83-100.) Claimant filed a timely request for review, which was denied by the Appeal's Council on September 26, 2016, making the ALJ's decision the final decision of the Commissioner. (R. 1-3.) This action followed and the parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c).

### B. Medical History

The records before the Court date back to 2011 and illustrate a history of hypertension, coronary disease, hepatitis B, asthma, hypothyroidism, and obesity, among other ailments. Records from Roseland Community Hospital from 2011 through 2014 reveal frequent visits to the Emergency Room (sometimes multiple times a month) for various problems, including shortness of breath, chest pain, dizziness, abdominal pain, and joint pain. (R. 324-437, 664-798, 928-1152.) She was usually treated, discharged with pain medication, and advised to follow up with primary care physicians for further assessment or treatment, though she often just returned to the ER with additional complaints. Throughout the same period, claimant expressed repeated complaints of pain in her knees, shoulder, and back to physicians at Heartland Health

---

[1] Claimant apparently filed a prior application for SSI on March 2, 2009, alleging disability beginning February 15, 2009. That claim was denied by an ALJ on June 30, 2011, and the Appeal's Council subsequently denied review. Because the current application was based on the same facts and issues that were involved in the prior application, the ALJ in this matter only considered the question of disability during the periods of June 1, 2004 to February 14, 2009 and from July 1, 2011 through the date of the decision. Claimant takes no issue with the ALJ's decision in this regard.

2

Center (R. 449-526) and Chicago Family Health Center (R. 312-315, 438-447, 527-572.)

On November 2, 2012, primary care physician Dr. Catalano completed a medical source statement. (R. 444-447.) According to Dr. Catalano, Claimant had more than 50% reduced capacity in her ability to walk, climb, push and pull, and up to 20% reduced capacity in her ability to bend, stoop, and perform activities of daily living. (R. 447.) Around the same time, another primary care physician, Dr. Thota, submitted a letter indicating that Claimant is "unable to work, due to her recurrent chest pain." (R. 448.) Dr. Thota explained that Claimant was also being evaluated for coronary artery disease and treated for hypertension, history of chronic heart failure, and thyroid disease. (*Id.*)

Claimant underwent a consultative exam on September 27, 2013. She reported a history of hypertension and congestive heart failure, and pain in her knee. (R. 856.) She said she did not have any difficulties standing or walking. (*Id.*) Upon physical exam, Claimant's gait was normal. (R. 857.) Her range of motion of the spine and extremities was normal except for slight decreased flexion in her knees. (R. 858.) The consulting physician assessed chronic hypertension, history of congestive heart failure, hypothyroidism, arthritis, asthma, and obesity. (R. 858-59.)

By way of a letter, Dominique Davis, the resident services education coordinator at Mercy Housing, reported that she knows Claimant as a student of the Mercy Housing "Literacy Program." (R. 874.) In conjunction with that program, Ms. Davis administered the Test of Adult Basic Education ("TABE") to Claimant in October of 2014. (*Id.*) At that time, Claimant "scored a grade level equivalency of 4.1." (*Id.*) Ms. Davis explained that

despite continued participation in the program, Claimant has shown "minimal progress in grade level gains," "struggles substantially with maintaining focus for extended periods of time and has difficulty concentrating on qualitative reasoning tasks." (*Id.*)

**C. Hearing Testimony**

Claimant appeared at a hearing before the ALJ and provided testimony regarding her symptoms and daily activities. At the time of the hearing, she was 48 years old and living by herself in an apartment complex. (R. 21, 26.) She completed eighth grade. (*Id.*)

Claimant described daily lower back pain, which has worsened over a six-year period. (R. 22, 31.) It is triggered while lying down flat, while trying to get out of the tub, and flares up while sitting. (R. 24, 30-31.) For relief, Claimant lays on her side for thirty minutes at a time about three times a day. (R. 32-33.) She uses heating pads daily, has taken muscle relaxers in the past, and was recently referred for massage therapy. (R. 24, 31.)

Claimant's asthma and heart problems cause shortness of breath and chest pains, in particular while trying to perform daily activities, such as dressing or bathing. (R. 25, 29-30.) She takes nitroglycerin once a week, but it causes headaches. (R. 25.)

Claimant also testified to swelling in her left foot and right hand, and arthritis in her left knee, right shoulder, and possibly right elbow. (R. 26.) She cannot comb her hair with her right hand and has trouble putting on her shoes. (R. 27.) Her neighbors often come over to help her get dressed, wash clothes, and cook. (R. 27-28.) She spends the majority of her time watching television in her own apartment or with her

neighbors. (R. 28.) She smokes cigarettes every day, but drinks only on special occasions. (R. 29.)

A vocational expert ("VE") also offered testimony at the hearing. The VE agreed that Claimant was a "younger individual" (45-49), with limited education, and no past relevant work. (R. 34.) The ALJ proposed a number of hypothetical individuals to the VE, including one who could stand and walk for two hours in an eight-hour day, sit for six; occasionally lift twenty pounds, frequently ten; must avoid concentrated exposure to extreme temperatures and pulmonary irritants; could not climb ladders ropes or scaffolds; could occasionally climb stairs and ramps, kneel crouch and crawl; and could occasionally reach with the right, dominant arm. (R. 34-39.) According to the VE, such an individual could perform the sedentary, unskilled jobs of circuit board assembler, address clerk, and document preparer. (R. 38-39.)

The VE confirmed that an individual who was off task for more than twenty percent of the day would be precluded from all competitive work. (R. 39.) Similarly, an individual who needed to take three thirty-minute breaks a day would be unable to maintain competitive work. (R. 40.)

## II. LEGAL ANALYSIS

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305

(7th Cir. 1995) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (*quoting Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The ALJ "must build an accurate and logical bridge from the evidence to her conclusion," although she need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 990 F.2d 180, 181 (7th Cir. 1993) (per curiam) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted)).

**B. Analysis under the Social Security Act**

To qualify for SSI, a claimant must be disabled under the Social Security Act. A claimant is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

6

continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

### C. The ALJ's Decision

The ALJ applied the five-step analysis in determining Claimant was not disabled. At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the application date. (R. 85.) Next, the ALJ concluded that Claimant suffered from the following severe impairments: coronary artery disease, congestive heart failure, obesity, hepatitis B, hypothyroidism, asthma, diabetes mellitus, and unspecified arthralgias. (R. 85-86.) At step three, the ALJ decided that Claimant's impairments and combination of impairments did not meet or medically equal any of the SSA's Listings. (R. 86-88.)

Before progressing to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), ultimately concluding that Claimant could perform sedentary work as defined in 20 CFR 416.967(a), with some additional limitations. Specifically, the ALJ

7

found the Claimant could lift and carry twenty pounds occasionally, ten pounds frequently, sit for six hours and stand for two hours in an eight-hour day; occasionally crouch, kneel, crawl, climb ramps or stairs, and reach with the right dominant arm; never climb ladders, ropes or scaffolds; and must avoid concentrated exposure to extreme temperatures and environmental irritants. (R. 88-99.) There was no past relevant work to consider at step four but, based on the RFC, the ALJ concluded at step five that there were jobs claimant could perform such as circuit board assembler, address clerk, and document preparer. (R. 99-100.)

Claimant now argues that the ALJ failed to properly consider the medical vocational guidelines; ignored or rejected plaintiff's credible testimony; and improperly discredited the opinions of claimant's treating physicians.

### D. Remand Is Required for Further Consideration of Claimant's Non-Exertional Limitations.

Claimant first argues that the ALJ failed to properly consider the medical vocational guidelines after finding she was a "younger individual" limited to less than sedentary work. According to Claimant, because the results of the TABE test support a finding that she is illiterate, medical vocational guideline 201.17 required the ALJ to find her disabled. Although the record is not complete enough to support a finding that Claimant is illiterate, the Court finds that remand is required for further consideration of certain non-exertional limitations that the ALJ did not properly consider in her analysis, such as her ability to read and write, maintain concentration, and follow instructions.

At step five of the analysis described above, an ALJ must determine whether the claimant can perform any work in the economy. *Dixon*, 270 F.3d at 1176. To this end, the ALJ may use the medical vocational guidelines (also referred to as, the "grids") to

8

determine whether other jobs exist in the national or regional economy that a claimant can perform. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). However, the grids only take account of exertional impairments, which are those that affect the claimant's ability to meet the strength demands of jobs (i.e. siting standing, walking, lifting, etc.). *Id.* Non-exertional impairments, on the other hand, are defined as all other impairments that do not affect a claimant's ability to meet the strength demands, such as depression, anxiety, difficulty concentrating or remembering, etc. *Id.* If a claimant suffers from both exertional and non-exertional limitations, the grids are not determinative but "rather provide a framework for consideration." *Smith v. Colvin*, 931 F. Supp. 2d 890, 896 (N.D. Ill. 2013).

Here, after assessing Claimant's RFC, which included both exertional and non-exertional limitations, the ALJ properly acknowledged that the grids are not determinative, but serve as a framework. (R. 99.) He noted that if the Claimant had the RFC to perform the full range of sedentary work, a finding of "not disabled" would be directed by medical vocational rule 201.18. Where, as here, Claimant did not expressly inform the ALJ that she was illiterate, the ALJ's failure to expressly consider guideline 201.17 does not amount to independent reversible error. Instead, our concern (and plaintiff's, as better articulated in her reply), is not necessarily with the grids, but with the ALJ's overall consideration of Claimant's non-exertional impairments, including his dismissal of the letter from Ms. Davis, the housing education coordinator.

After a detailed review of the medical evidence, the ALJ acknowledged the letter from Ms. Davis, including the results of the TABE test (placing her at a 4th grade level), and Ms. Davis' observations that Claimant had difficulty maintaining focus and

9

concentrating on tasks. The ALJ gave little weight to Ms. Davis' assessment stating that:

> Ms. Davis is not a trained or qualified mental health professional and there are no corroborating objective findings. Throughout the record mini mental status exams performed during physical examinations have routinely been unremarkable and no treating or examining source has noted any difficulty with the claimant's focus or concentration.

(R. 98.) The ALJ was certainly within his province to note that Ms. Davis was not a mental health professional. But this is where we part ways with his reasoning. First, it is not surprising that the record includes few observations about Claimant's ability to concentrate or maintain focus. The ALJ was well aware that Claimant most often sought treatment for her physical ailments at various emergency rooms, perhaps due to an inability to pay, though the ALJ never appeared to ask as much. In any event, to expect emergency room physicians to make detailed observations about Claimant's ability to read, write, and concentrate in a mini mental status exam for physical complaints defies reason.

More importantly, the fact that a claimant "does not have a separate, severe mental impairment" does not mean that mental-based limitations may be ignored. *Gotz v. Barnhart*, 207 F. Supp. 2d 886, 901 n.18 (E.D. Wis. 2002). Here, although the ALJ did not completely ignore Claimant's questionable literacy level, and her ability to concentrate and maintain focus, his reasons for discrediting the only evidence of these limitations lack merit. To be clear, the Court makes no finding as to whether Claimant is in fact "illiterate," as that term is used in the grids. Instead the Court requires only that the ALJ take steps to properly consider these potential limitations, and any resulting effects on Claimant's RFC.

10

In light of this decision, the Court need not address Claimant's remaining arguments in detail. The Court notes, however, that the ALJ did provide ample reasoning for discrediting the opinions of Claimant's treating physicians with respect to her physical capabilities. As for credibility, further assessment may be required in connection with the remand instructions described above.

## III. Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This case is remanded to the Social Security Administration for proceedings consistent with this Opinion. It is so ordered.

_____
**The Honorable Michael T. Mason
United States Magistrate Judge**

**DATED: August 21, 2018**